UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LEO HABERER,

                    Plaintiff,

                    **Hon. Hugh B. Scott**

        v.

                    **16CV892V**

                    **Report**

NANCY A. BERRYHILL[1], Acting
Commissioner of Social Security,
                    **and**
                    **Recommendation**

                  Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 12 (plaintiff), 14 (defendant Commissioner)).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

The plaintiff ("Leo Haberer" or "plaintiff") filed an application for disability insurance benefits on June 15, 2011.   That application was denied initially and on reconsideration.   The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated March 15, 2013, that the plaintiff was not

---

[1]Nancy A. Berryhill is now the Acting Commissioner of Social Security.   Pursuant to Federal Rule of Civil Procedure 25(d)(1), Ms. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as Defendant in this action; no further action is required, 42 U.S.C. § 405(g).

disabled within the meaning of the Social Security Act (R. 149)[2].   In that decision, the ALJ
found that plaintiff had a residual functional capacity to perform work at a light exertional level
with an exception (among others) that he could not stoop, kneel, crouch, or crawl (R. 151).
There, the ALJ noted that the vocational expert opined that a claimant in plaintiff's
circumstances could perform work as an assembler, ticket taker, mail clerk, or addresser, light or
sedentary unskilled occupations (R. 158).   The Appeals Council remanded that decision for
further consideration of treating source's opinion and reexamination of plaintiff's residual
functional capacity assessment (R. 166).   The ALJ rendered his remand decision again
concluding, based upon the Medical-Vocational Rules that plaintiff was not disabled (R. 18, 31).
The ALJ's decision became the final decision of the Commissioner on September 8, 2016, when
the Appeals Council denied plaintiff's request for review (R. 1).

Plaintiff commenced this action on November 5, 2016 (Docket No. 1).   The parties
moved for judgment on the pleadings (Docket Nos. 12, 14).   The motions were deemed
submitted on August 22, 2017 (Docket No. 11).

## FACTUAL BACKGROUND

Plaintiff was born on April 27, 1967, and has a limited education and ability to
communicate in English (R. 31, 157, 158).   He worked as a roofer; the ALJ later found that he
could not return to that work due to finding that plaintiff could perform sedentary work (R. 31,
157).

---

[2]References noted as "(R.__)" are to the certified record of the administrative
proceedings, filed with this Court as Docket No. 7.

Plaintiff claimed impairments of congestive heart failure and atrial fibrillation, status post right foot surgery, and herniated nucleus pulposi of the lumbar spine (R. 20).   He also claimed right ear impairment with associated vertigo, but only minimal impact of work-related functioning and stabilized after July 2012 surgery (R. 20-21).   The ALJ also considered plaintiff's obesity (with plaintiff weighing 251 pounds, standing 5'10", and a body mass index of 36.0), but plaintiff was not prescribed treatment for obesity and his doctors made only conservative recommendations to treat (R. 21).

Plaintiff also claimed disability due to anxiety, but that is subject to medication (R. 21). The ALJ found that minimal limitation from anxiety to perform basic work activities (R. 22). The ALJ there found that Listing 12.00C "paragraph B" criteria were not met; in particular, the ALJ deemed that plaintiff to have no limitations for his activities of daily living, mild limitations for social functioning and concentration, persistence, or pace, and no episodes of decompensation (R. 22-23).

## MEDICAL AND VOCATIONAL EVIDENCE

The ALJ found that plaintiff's impairments or combinations of impairments did not meet or medically equal the severity of the Social Security regulatory listings of ailments (R. 23-24).

Plaintiff claims an onset on April 19, 2011 (R. 18, 348).   Then, he sought treatment with a cardiologist due to complaints of episodes of dizziness, blurry vision, dyspnea, and palpitations (R. 25, 406-07, 409, 422).   After a nuclear stress test, echocardiography, and a Holter monitor, plaintiff was found to have atrial fibrillation with no ischemia and a left ventricle ejection fraction of 31% (R. 25, 415, 420, 426-27, 435).   He also reported severe right foot pain (R. 25),

which the ALJ found did not meet Listing 1.02(A) criteria for a major dysfunction of a joint

involving one major peripheral weight-bearing joint (R. 23).

In late June 2011, plaintiff reported feeling well, with minor complaints (R. 25, 418).

Although complaining of dizziness, fatigue, and general malaise, plaintiff denied having chest

pains, pressure, or tightness and shortness of breath or dyspnea on exertion (R. 25, 418).   In

August 2011, he reported that taking Metoprolol helped him immensely and that he had only

mild episodes of dizziness (R. 25, 470). A multiple gated acquisition scan ("MUGA") in

September 2011 showed that plaintiff's left ventricle ejection fraction increased to 54% (R. 25,

543).   On September 29, 2011, state agency medical examiner Dr. Helen Findlay did not

examine plaintiff but, upon reviewing his medical record, opined that he could perform light

exertion work, lifting and carrying 10 pounds frequently, up to 20 pounds occasionally, while

walking and standing for six hours of an eight-hour workday (R. 28, 490-91).   Dr. Findlay did

note that if further development was needed, the evaluation of plaintiff's right foot by a podiatrist

and MUGA scan in October 2011 needed to be reviewed (R. 490).   The ALJ only gave "some

weight" to Dr. Findlay's conclusions, since they were partially consistent with plaintiff's medical

record but consistent with the ALJ's finding that plaintiff could perform sedentary work with

light level of lifting allowed (R. 28).

The ALJ noted that by January 2012 plaintiff's echocardiography showed normal left

systolic ventricular function with an ejection fraction of 60% (R. 26, 556, 684).   On February 8,

2012, Dr. Smith wrote in a state agency assessment that plaintiff was moderately limited in

lifting and carrying, that he was not able to lift over 30 pounds (R. 569).   That form did not ask

about plaintiff's ability to bend or stoop and did not volunteer his view on plaintiff's limitations in this area.

On March 21, 2013, plaintiff had cardioversion performed (R. 27, 911), with cardiologist Dr. Thomas Smith finding that plaintiff's "atrial fibrillation was causing him much fatigue, heart racing, and palpitations," but he currently was in sinus rhythm with occasional feeling of palpitations (R. 911-12, 27).   Dr. Smith concluded that plaintiff then was a low cardiac risk for foot surgery and advised that foot surgery could proceed as scheduled (R. 912).

In 1994 (<u>cf.</u> R. 988 (plaintiff reported shattered heel injury and surgery in 1989)), plaintiff fell from a roof and shattered his right calcaneus (the heel bone), which required surgery to install plates and pins (R. 25, 584).   X-rays in May 2011 showed degenerative and post-traumatic changes in the right foot, with screws in the right ankle that showed to be broken (R. 25, 584).   Then in January 2012, plaintiff complained of right foot pain, with numbness and tingling at the back of the heel (R. 26, 584).   Plaintiff did not take pain medication but walked with a limping gait and his right foot slightly swollen (R. 26, 585-86).   In May 2013, plaintiff complained of back and foot pain (R. 27, 987).   He had normal gait and his spinal range of motion was unrestricted (R. 27, 988).   On July 10, 2013, plaintiff had right subtalar joint fusion, right calcaneocuboid joint fusion, and removal of hardware (R. 27, 1003-05).   Meanwhile, on July 31, 2012, plaintiff had ear surgery (R. 689).

On December 23, 2014, Dr. Smith completed a residual functional capacity questionnaire (R. 843-48); noting plaintiff's symptoms and finding that he had marked limitation for physical activity (R. 843, 844).   Dr. Smith opined that plaintiff could perform "low stress jobs" (R. 844) (Docket No. 12, Pl. Memo. at 22).   Dr. Smith then found that plaintiff's experience with cardiac

symptoms was frequently severe enough to interfere with plaintiff's attention and concentration (R. 845; Docket No. 12, Pl. Memo. at 22-23).   Dr. Smith concluded that plaintiff's cardiac impairments were expected to last at least twelve months (R. 845).   If placed in a competitive work situation, Dr. Smith believes that plaintiff could sit for more than two hours and stand for only 10 minutes (R. 845, 846; Docket No. 12, Pl. Memo. at 23), rarely lift 10 pounds and occasionally lift less than that (R. 847; Docket No. 12, Pl. Memo. at 23).   Dr. Smith advised that plaintiff not twist, stoop (or bend), crouch, climb ladders, or climb stairs (R. 847).

The ALJ gave limited weight to Dr. Smith's 2014 assessment, accepting the fact that Dr. Smith's expertise and longitudinal care for plaintiff and that the 2014 assessment was the latest in time (R. 29).   Nevertheless, the ALJ found that this 2014 assessment was consistent with a finding that plaintiff could perform sedentary exertional work (R. 29).

On March 25, 2015, Dr. Sultana Razia answered a questionnaire on plaintiff's condition and found that, due to his mild congestive heart failure and moderate back and joint pain, plaintiff could never lift or carry up to 10 pounds (R. 1322, 1321, 29).   The ALJ rejected this finding as being inconsistent with the rest of the medical record (including Dr. Smith's 2012 and 2014 findings), which found that plaintiff was capable of lifting more (R. 29).

The ALJ found that plaintiff's impairments could reasonably cause the alleged symptoms but plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms "are not entirely credible" (R. 25).   He then noted that plaintiff had a residual functional capacity to perform a full range of sedentary work, with restriction on lifting up to 20 pounds occasionally and or frequently lifting up to 10 pounds (R. 24).   After finding that plaintiff could not return to his past relevant work as a roofer (R. 31), the ALJ applied the

Medical-Vocational Rules, 20 C.F.R. §§ 416.969, 416.969a; 20 C.F.R. part 404, subpart P, Appx. 2, because plaintiff could perform substantially all the exertional demands of sedentary work (R. 31). Applying plaintiff's age, education, work experience, transferability of job skills, and residual functional capacity, concluding that plaintiff was not disabled under the regulations (R. 31-32), 20 C.F.R. part 404, subpart P, Appx. 2, Rules 201.25 (younger individual 45-49 years old), 201.19 (younger individual 18-44 years old).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience,

engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment.  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform."  Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467.  If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).  However, it should be noted that the ALJ has an affirmative duty to fully develop the record.  Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity

8

and the physical and mental demands of the work that has done in the past.    20 C.F.R.

§§ 404.1520(e) & 416.920(e).    When the plaintiff's impairment is a mental one, special "care

must be taken to obtain a precise description of the particular job duties which are likely to

produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments,

working with other people, etc., in order to determine if the claimant's mental impairment is

compatible with the performance of such work."    See Social Security Ruling 82-62 (1982);

Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).    The ALJ must then determine the

individual's ability to return to past relevant work given the claimant's residual functional

capacity.    Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, plaintiff argues that remand is required here because the ALJ did not

adhere to the treating physician's rule by failing to state the degree of weight given to the

opinions of his cardiologist, Dr. Thomas Smith (Docket No. 12, Pl. Memo. at 22-26).    He

complains that the ALJ overly relied upon the stale findings of state agency physician

Dr. Findlay (id. at 26-28).

Defendant Commissioner counters that the ALJ properly weighed Dr. Smith's opinions

(Docket No. 14, Def. Memo. at 22-25) and properly considered Dr. Findlay's opinion (id. at 25-

28).    Defendant points out (id. at 22-24) in response to plaintiff's apparent confusion on the

ALJ's intent (cf. Docket No. 12, Pl. Memo. at 25-26) that the ALJ's decision contained a

typographical error regarding the degree he relied upon Dr. Smith's 2014 opinion (cf. R. 29).

As for Dr. Findlay's opinion, defendant argues that the ALJ ultimately gave it limited effect and

relied upon the complete medical record (rather than his own lay assessment) in finding that plaintiff could perform sedentary work (Docket No. 14, Def. Memo. at 25-27, 27-28).

Plaintiff replies that the ALJ intended to give more weight to Dr. Smith's 2014 findings than were stated in the ALJ's decision, but defendant now arguing that the ALJ intended to give controlling weight to Dr. Smith's opinion is "sheer speculation" (Docket No. 15, Pl. Reply Memo. at 1-2).    If this were the case, Dr. Smith's disabling limitations would have been incorporated in the ALJ's residual functional capacity (id. at 2-4).

As for Dr. Findlay's opinion, plaintiff in reply argues that defendant is now arguing that the ALJ discounted Dr. Findlay's opinion and relied upon the ALJ's own lay assessment of the treatment record (id. at 4).    Plaintiff concludes that this breach requires remand (id. at 4-5).

I.    Treating Physician's Rule

As noted by plaintiff (Docket No. 12, Pl. Memo. at 23), the Commissioner "recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant," Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008), with the opinion of the treating physician being given controlling weight so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," id.; see 20 C.F.R. § 416.927(d)(2).    Among the factors in considering a treating physician's findings is the length of treatment relationship, Burgess, supra, 537 F.3d at 129, with the longer the period of treatment, the more weight the Commissioner is to give that treating source's opinion, id. (id. at 24).    The ALJ is to set forth his reasons for the weight assigned to that treating source's opinion,

id. at 129-30 (id.), with failure to provide such "good reasons" for not crediting the opinion as grounds for remand, id. (internal quotations omitted) (id.).

The ALJ did give "significant weight" to cardiologist Dr. Smith's February 8, 2012, assessment (R. 28-29, 569) that plaintiff could not lift over 30 pounds (R. 569), although noting the contradictions that assessment had with Dr. Smith's 2011 assessment on plaintiff's ability to lift (R. 28-29).   In 2011, Dr. Smith found that plaintiff was either disabled or "totally disabled" in both a "to whom it may concern" note and insurance claim forms (R. 415, 489, 493, 28) and not in either a state agency or Social Security residual functional capacity assessment.   The ALJ also indicated the weight he gave to the cardiologist's assessment of plaintiff's mental functioning, while noting that it was beyond Dr. Smith's area of specialty (R. 22).

Plaintiff claims that the ALJ disregarded Dr. Smith's 2014 residual functional capacity questionnaire.   The ALJ gave that opinion "limited" weight (later deemed by defendant to be the typographic error, Docket No. 14, Def. Memo. at 22-24), finding that Dr. Smith's opinion supported a finding that plaintiff could perform work at a sedentary exertion level, while noting inconsistencies in prior opinions of Dr. Smith (R. 29).   The ALJ relied upon his reading of Dr. Smith's findings to find a later medical evaluation (by Dr. Razia from March 2015 that plaintiff could not lift more than 10 pounds, R. 1321-22) also was inconsistent with plaintiff's medical record finding that he could lift more than 10 pounds (R. 29).

Thus, the ALJ relied upon Dr. Smith's 2012 findings (that plaintiff could lift up to 30 pounds, R. 569) rather than the more recent 2014 assessment that he could lift less (R. 843). The 2012 assessment found that plaintiff would be restricted for 1-3 months without indicating that plaintiff had a severe impairment lasting at least 12 months (R. 569), whereas the 2014

assessment found that plaintiff would be impaired for at least 12 months (R. 845).   Dr. Smith

noted in the latter assessment that he first treated plaintiff in April 2011 and had seen him in

follow up appointments every six months since (R. 843).   The ALJ's reliance upon the 2014

findings is despite defendant's construction that the ALJ's weighing of Dr. Smith's 2014 opinion

was a typographical error; the ALJ here clearly parsed which portions of Dr. Smith's 2014

opinion he relied upon and which parts he questioned.

The ALJ also disregards Dr. Smith's 2014 finding that he could not bend or stoop

(R. 847; Docket No. 12, Pl. Memo. at 26; see also R. 1319, Dr. Sultana 2015 assessment that

plaintiff still could not stoop), although the ALJ accepted that limitation in his initial opinion's

residual functional capacity (cf. R. 151).   The new residual functional capacity assessment does

not factor in whether plaintiff could bend or stoop, but cf. Dzencelowcz v. Colvin, No. 5:15-CV-

0329 (GTS), 2016 U.S. Dist. LEXIS 84092, at * (N.D.N.Y. June 29, 2016) (ALJ explicitly stated

that plaintiff, who could perform sedentary work, could not stoop, rejecting argument that the

inability to stoop was inconsistent with the ability to perform sedentary work).

This matter thus turns on the extent plaintiff could perform sedentary work.   The

regulations define sedentary work as a person able to lift up to 10 pounds at a time or

occasionally pick up such items as small tools, 20 C.F.R. § 416.967(a).   As the Commissioner

stated in her regulations, "a complete inability to stoop would significantly erode the unskilled

sedentary occupation base and a finding that the individual is disabled would usually apply,"

SSR 96-9p, 1996 SSR LEXIS 6, *22 (July 2, 1996); see Colegrove v. Colvin, 86 F. Supp.3d 221,

231-32 (W.D.N.Y. 2016) (Wolford, J.) (remanding to Commissioner to consider treating

physician's finding that plaintiff was limited to sedentary work and could not stoop would render

that plaintiff disabled).    That regulation also states that the full range of sedentary work

"requires the ability to stoop up to one-third of an ordinary work day, and a complete inability to

stoop . . . significantly erodes the unskilled sedentary occupational base," <u>Colabufo v. Colvin</u>,

Civil Action No. 5:13-188, 2014 U.S. Dist. LEXIS 76173, at *30 & n.28 (N.D.N.Y. Apr. 29,

2014) (Hines, Mag. J.) (citing SSR 96-9p, <u>supra</u>, 1996 SSR LEXIS 6, at *22).

The ALJ in his second decision did not consider whether plaintiff's inability to stoop or

bend rendered him disabled despite his ability to perform sedentary work.    The ALJ here erred

in disregarding Dr. Smith's most current opinion, especially on plaintiff's inability to stoop or

bend.    While the ALJ may have given more weight to that assessment than is stated in the actual

decision, the ALJ did not incorporate the limitations expressed in the 2014 assessment (<u>see</u>

Docket No. 15, Pl. Reply Memo. at 2-3).    Regardless of the weight the ALJ ostensibly gave to

Dr. Smith's 2014 findings, the ALJ missed the inability to stoop.    The ALJ compounds this error

by referring to the Medical-Vocational Guidelines (R. 31-32) rather than a vocational expert to

consult whether a claimant in plaintiff's circumstances could still perform sedentary work when

limited "to less than occasional stooping," SSR 96-9p, <u>supra</u>, 1996 SSR LEXIS 6, at *22.

Instead, the vocational expert was used to identify plaintiff's past relevant work (R. 129).    On

this basis, plaintiff's motion (Docket No. 12) for judgment should be **granted**, defendant's

countering motion for judgment (Docket No. 14) should be **denied**, and the matter remanded for

further proceedings.

II.    State Agency Physician's Opinion

Plaintiff next complains that Dr. Findlay did not examine him, that her opinion was stale

and rendered prior to plaintiff having three operations (Docket No. 12, Pl. Memo. at 26-28).    If

the ALJ rejects a medical opinion, he must cite to another medical opinion that supports his position, <u>Balsamo v. Chater</u>, 142 F.3d 75, 80-81 (2d Cir. 1998) (Docket No. 15, Pl. Reply Memo. at 4).   As defendant observes (Docket No. 14, Def. Memo. at 26), the ALJ gave Dr. Findlay's opinion "limited probative value" (<u>id.</u>, citing R. 28), with the ALJ disagreeing with Dr. Findlay's ultimate assessment that plaintiff was able to perform light work (Docket No. 14, Def. Memo. at 26; <u>compare</u> R. 24, 28 <u>with</u> R. 490-91).   The ALJ recognized that Dr. Findlay's assessment was early in plaintiff's medical history (Docket No. 14, Def. Memo. at 26) and applied her assessment accordingly.   There is no indication that the ALJ then substituted his lay opinion for the medical record.   Since it is recommended that the matter be remanded on factoring in plaintiff's inability to stoop in the residual functional capacity, the ALJ again could review plaintiff's entire medical record to determine his ability to perform sedentary work.

On this point, plaintiff's motion for judgment (Docket No. 12) should be **denied**.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further administrative proceedings. Defendant's motion for judgment on the pleadings (Docket No. 14) should be **DENIED** and plaintiff's motion for similar relief in his favor (Docket No. 12) should be **GRANTED** for the reasons stated above.


Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72(b).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72(b), "[w]ritten objections to proposed findings of fact and recommendations for disposition submitted by a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

So Ordered.

_s/Hugh B. Scott_
_____
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
October 24, 2017